**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal Number: 3:13CR21 |
| | ) | Hon. Henry E. Hudson |
| **DAWDA DRAMMEH,** | ) | Sentencing: June 25, 2013 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S POSITION WITH REGARD TO SENTENCING FACTORS AND RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR UPWARD DEPARTURE**

Pursuant to Rule 32 of the *Federal Rules of Criminal Procedure* and Section 6A1.3 of the advisory *United States Sentencing Guidelines*, the Defendant Dawda Drammeh, by counsel, hereby states that he has received and reviewed the Presentence Report ("PSR") prepared in this case and that he has no corrections or objections to report.[1] In addition, Mr. Drammeh opposes the government's request for an upward departure based upon under-representation of criminal history under U.S.S.G. § 4A1.3, as such a departure is unwarranted under the circumstances. Mr. Drammeh respectfully requests that this Court impose a sentence within the calculated advisory guideline range of 18-24 months imprisonment.

**BACKGROUND**

On April 2, 2013, Mr. Drammeh entered a guilty plea to a one-count indictment, which charges him with possession of 15 or more counterfeit or unauthorized access devices, in violation

---

[1] Mr. Drammeh withdraws the objection to the calculation of the loss amount, as reflected in the Addendum, and anticipates that the government will likewise withdraw its objection to full acceptance of responsibility. As a result, the advisory guideline range will be 18-24 months imprisonment.

1

of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(i). The maximum penalties for this offense are 10 years imprisonment, 3 years of supervised release, a $250,000 fine, restitution, and $100 special assessment.

The advisory guideline range for this 27 year old male who has never served a significant period of incarceration, is 18 to 24 months imprisonment. This range is based on an offense level total of 16 and a criminal history category of III. Mr. Drammeh respectfully requests that this Court impose a sentence within this guideline range, without imposing an upward departure, as a sentence within this range is sufficient but not greater than necessary to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a). This sentence reflects the seriousness of the offense and Mr. Drammeh's conduct; the history and characteristics that Mr. Drammeh brings to the Court, including his criminal history; and will appropriately punish him and deter him from further criminal conduct.

## ARGUMENT

### *An Upward Departure Under U.S.S.G. § 4A1.3 is Unwarranted*

When determining the appropriate sentence in a particular case, the sentencing court must first determine whether the advisory guideline range has been properly calculated. See *Gall v. United States*, 552 U.S. 38, 49 (2007). Neither party here disputes that the guideline range has been properly calculated at a range of 18-24 months imprisonment. Next, the Court must determine whether the recommended sentences advanced by the parties is warranted under the sentencing factors pursuant to 18 U.S.C. § 3553(a). *See id.* at 49-50. If the Court determines that a sentence within the properly calculated guideline range does not meet goals of § 3353(a), then the court may reach the appropriate sentence by imposing a departure, a variance, or both. *See id.*; *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). Although the terms departure and variance have been

used interchangeably, *see United States v. Diosdado-Star*, 630 F.3d 359, 364-65 (4th Cir. 2011), they "represent two distinct sentencing options available to a sentencing court," *see United States v. Rivera-Santana*, 668 F.3d 95, 100 n.6 (4th Cir. 2012) (citing *Irizarry v. United States*, 553 U.S. 708, 713-16 (2008)). A departure is a deviation from the otherwise applicable guideline range, that is "imposed under the framework set out in the Guidelines." *Rivera-Santana*, 668 F.3d at 100 n.6. "[A] variance has been recognized as a non-Guidelines sentence (either above or below the properly calculated advisory Guidelines range) that is nevertheless 'justified under the sentencing factors set forth in 18 U.S.C. § 3553(a).'" *Id.* (citing *Irizarry*, 553 U.S. at 715). Thus, in deciding whether to impose a sentence outside of the advisory guideline range, whether by departure, variance, or both, the sentencing court must impose a sentence that is "sufficient, but not greater than necessary," to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a). See *Green*, 436 F.3d at 455 ("[D]istrict courts still must follow the commands of 18 U.S.C. § 3553 . . . ."). This is especially important, as the Guidelines "seek to embody the § 3553(a) considerations, both in principle and practice." *Rita v. United States*, 551 U.S. 338, 350 (2007).

In determining whether an upward departure is appropriate in this case, the Guidelines themselves are instructive. An upward departure is to be applied only if offense characteristics or offender characteristics involve an aggravating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." U.S.S.G. § 5K2.0(a). "Departures permit courts to impose an appropriate sentence in the *exceptional* case in which mechanical application of the guidelines would fail to achieve the statutory purposes and goals of sentencing." U.S.S.G. § 5K2.0, comment

3

(backg'd) (emphasis added). Such an exceptional case exists when the facts of the particular case fall outside of the "heartland" of a particular guideline. *See Rita*, 551 U.S. at 351. When imposing a sentence outside of the advisory guideline range, courts must "ensure that the justification is sufficiently compelling to support" the level of the variance or departure. *Gall*, 552 U.S. at 50. "[A] major departure should be supported by a more significant justification than a minor one." *Id.*

U.S.S.G. § 4A1.3(a) authorizes courts to depart upward from the otherwise appropriately calculated guideline range if "reliable information indicates that the defendant's criminal history category *substantially* under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." (emphasis added). In explaining the purpose of the departure, the Commission gives an example of "a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct. Yet, the first defendant's criminal history clearly may be more serious." *Id.* comment (backg'd). When determining whether a departure is warranted, courts should "consider not only the number of prior offenses committed by a defendant, but also their seriousness." *United States v. Cash*, 983 F.2d 558, 561 (4th Cir. 1992); *see also* U.S.S.G. § 4A1.3, comment. (n. 2(B)) (noting that "the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record"). An upward departure under U.S.S.G. § 4A1.3 should be used sparingly. *See id.* comment. (backg'd.) (noting that a departure under this Guideline should be applied in "limited circumstances"). If the court finds that a departure is warranted, the court must use an incremental approach to determine the extent of the departure. *United States v. McNeill*, 598 F.3d 161, 166 (4th Cir. 2010); *United States*

*v. Dalton*, 477 F.3d 195, 199 (4th Cir. 2007). This approach requires the sentencing court to refer first to the next higher category and explain why it fails to reflect the seriousness of the defendant's record before considering a higher category. *See United States v. Rusher*, 966 F.2d 868, 884 (4th Cir. 1992).

Mr. Drammeh's criminal history is not *significantly* under-represented, as contemplated under U.S.S.G. § 4A1.3. The probation officer correctly calculated his criminal history category at a level III, based on 6 criminal history points. Notably, the probation did not recommend an upward departure, noting that he "has no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines." PSR ¶ 130. Category III reflects a serious criminal history, although all except one of his convictions are misdemeanors. While it is arguable that Mr. Drammeh received some lenient treatment in sentencing, this is not the "extremely lenient treatment" contemplated by Section 4A1.3, in light of the nature of the prior convictions. Most involve selling counterfeit DVDs on the streets of New York City, initially as a teenager. While these offenses are not minor infractions, they are not large-scale fraud offenses or violent offenses. Indeed, there is no indication that Mr. Drammeh received any more lenient treatment than other defendants sentenced in state court for those types of offenses. In other words, Mr. Drammeh's criminal history category is comparable to the criminal history of other defendants within the same category. *See United States v. Nelson*, 166 F. Supp. 2d 1091, 1096 (E.D. Va. 2001). In addition, Mr. Drammeh has never been convicted of a violent offense. He has never served more than 105 days in jail, and now faces an advisory guideline range of 18-24 months imprisonment, which is a significant period of time, and more than sufficient to reflect the seriousness of his criminal history and recidivism.

*The Sentencing Factors Under Section 3553(a) Merit a Sentence Within the Advisory Guideline Range*

As promulgated in 18 U.S.C. § 3553(a), the Supreme Court has unequivocally held that, when fashioning the appropriate sentence in a case, sentencing courts are to look to both the Guidelines manual and the other sentencing factors articulated in 18 U.S.C. § 3553(a) *See United States v. Booker*, 543 U.S. 220, 245 (2005). As a result of *Booker*, the Guidelines became advisory and courts are now permitted "to tailor the sentence in light of other statutory concerns as well." *Id.* Indeed, Congress has expressly stated that [n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

When determining the appropriate sentence in a case, courts must first look to the applicable Guidelines and determine whether the advisory guideline range has been properly calculated. *See Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. United States*, 551 U.S. 338, 351(2007)). The Supreme Court has clearly stated that "sentencing court[s] do[] not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita*, 551 U.S. at 351. Instead, the Guidelines are merely a "starting point" or an "initial benchmark" that courts must look to in conducting its sentencing analysis. *See Gall*, 552 U.S. at 49. The Guidelines "now serve as one factor among several courts must consider in determining an appropriate sentence." *See Kimbrough*, 552 U.S. at 90. The statute itself makes clear that the Guidelines and policy statements are but two of seven factors, *see* 18 U.S.C. § 3553(a)(4), (5), courts must consider when imposing an appropriate sentence. *See* 18 U.S.C. § 3553(a).

Next, after listening to the parties' arguments as to the appropriate sentence, a sentencing judge must look to the other sentencing factors delineated under 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by the parties. *See Gall*, 552 U.S. at 49. The other factors courts must consider when imposing the appropriate sentence are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with appropriate correctional treatment, *id.* at §3553(a)(2); the kinds of sentences available, *id.* at §3553(a)(3); the need to avoid unwarranted disparity among defendants with similar records and conduct, *id.* at §3553(a)(6); and the need to provide restitution to any victims of the offense, *id.* at §3553(a)(7). The overarching admonition of 18 U.S.C. §3553(a) is that courts are obliged to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection." Thus, the advisory sentencing guideline range represents only a "rough approximation" of the sentencing objectives outlined in Section 3553(a). *Rita*, 551 U.S. at 351.

### A. *Nature and Circumstances of Offense*

This case involves Mr. Drammeh's possession of counterfeit and unauthorized access devices as a result of his arrest by a state trooper on April 15, 2012. During that arrest, the trooper recovered 48 gift cards that were re-encoded with credit card numbers belonging to others. Also, the trooper recovered a Sony Vaio laptop which contained a data file with 73 credit card numbers. As a result, the probation officer assessed a loss amount of $58,500. Mr. Drammeh also received enhancements

7

for the number of victims and for possession or use of an unauthorized or counterfeit access device. He entered a guilty plea and accepted responsibility for the offense.

### B. The History and Characteristics of Dawda Drammeh

Dawda Drammeh, who is 27 years old, was born in Serrekunda, Gambia. PSR at ¶ 71. In 1990, when he was just 4 years old, Mr. Drammeh's mother apparently suffered from mental illness and abandoned him and his family. PSR at ¶ 73. Mr. Drammeh has not seen or heard from his mother since that time, and has no real memories of her. *Id.* For the next two years, Mr. Drammeh was reared by his grandmother, while his father worked. PSR at ¶ 77. He reports that he was especially close to his grandmother and felt loved by her. *Id.*

While undoubtedly recovering from his mother's abandonment, the stability of life with his grandmother was upset once again when his father remarried when he was six years old. *Id.* Mr. Drammeh was placed under his stepmother's care, during which time he experienced physical abuse at her hands on a seemingly daily basis. This physical abuse consisted of punching, whipping, skin burning, and being strapped to a table to receive beatings. Mr. Drammeh told his father about the abuse he endured, but his father did nothing to stop the harm. After six years of marriage, Mr. Drammeh's father and stepmother divorced. *Id.*

During Mr. Drammeh's childhood and teenage years, he experienced sexual abuse by his paternal uncle, beginning when he was about 8 years old. PSR at ¶ 78. In 1995, Mr. Drammeh attempted suicide by jumping off a bridge into water, knowing that he could not swim. He was 9 years old at the time. After this suicide attempt, he was sent to France to live with relatives for two years. PSR ¶ 79. However the abuse by both his stepmother and uncle continued upon his return to Gambia. *Id.* Later, when he was about 14 years old, he tried once again to end his life by stepping

in front of a moving car, resulting in a broken leg. PSR at ¶ 91. Mr. Drammeh has stated that he attempted suicide because of the physical abuse of his stepmother and the continued sexual abuse by his uncle. PSR at ¶ 79. In addition to being abused by his own family, Mr. Drammeh was teased and picked on by classmates who believed he was gay. PSR at ¶ 77.

In 2003, in hopes of escaping his uncle, whom he had been living with, Mr. Drammeh came to the United States under a tourist visa to reside with his father in Atlanta, Georgia. PSR at ¶ 80. However, his uncle followed the family to Atlanta soon thereafter, and lived in the same house. In Atlanta, the sexual abuse by Mr. Drammeh's uncle continued, and his uncle threatened to kill him if he told anyone of the abuse. As a result, Mr. Drammeh lived in constant fear and never disclosed the abuse to his father. *Id.*

Mr. Drammeh's father relocated back to Gambia, leaving Mr. Drammeh in the sole care of his abusive uncle. PSR at ¶ 82. Thereafter, the sexual abuse continued and the physical beatings became more frequent. At one point, Mr. Drammeh's uncle, accusing his nephew of being "gay," hit him over the head with a 2 x 4 block of wood, causing an open wound. Mr. Drammeh is reminded of the incident daily by the large scar that remains on his head and the resulting memory loss. PSR at ¶¶ 89, 94.

In about 2004 or 2005, Mr. Drammeh was indefinitely withdrawn from school by his uncle. PSR at ¶¶ 83, 105. The sexual and physical abuse, coupled by his withdrawal from school, prompted Mr. Drammeh to flee his uncle and relocate to New York City. PSR at ¶ 83. For the next three months after Mr. Drammeh moved to New York, he was homeless, residing in shelters and living from place to place with friends until he was finally able to establish a stable residence in the Bronx. However, options were limited for a non-U.S. citizen without a formal education. Unable to obtain

steady employment, Mr. Drammeh began selling counterfeit DVDs on the streets of New York and small amounts of marijuana, activities which led to multiple convictions.

Mr. Drammeh continued to struggle in New York until 2009, when he moved to Maryland to live with and work for his aunt and uncle. PSR at ¶¶ 83, 108. However, still unable to maintain stable employment, Mr. Drammeh began purchasing and using counterfeit credit and gift cards, eventually becoming more involved in the offense. He now stands to be sentenced by this Court to a substantial sentence of imprisonment.

### C. *Punishment, Deterrence, and Treatment*

The remaining sentencing factors under 18 U.S.C. § 3553(a) essentially address punishment, deterrence, and treatment. Therefore, the appropriate inquiry in determining the sentence in this case is whether a sentence within the advisory guideline range of 18-24 months imprisonment is sufficient enough to punish Mr. Drammeh, to deter him and others from criminal behavior while protecting the public, and to afford adequate correctional treatment. A sentence within the guideline range sufficiently punishes Mr. Drammeh and reflects the seriousness of the offense in light of the fact that he is not a violent person, and has never served more than 105 days in jail. The government's argument that the guidelines do not adequately reflect the disruption to the victims in this case, is belied by the fact that he received a two-level enhancement for possession of counterfeit and unauthorized access devices under U.S.S.G. § 2B1.1(b)(11)((B)(i). It appropriately reflects the seriousness of his criminal history, and any upward departure of his criminal history is thus unwarranted. The sentencing range in this case is sufficient to deter Mr. Drammeh from continued criminal conduct, as it is significantly longer than any other sentence he has faced. It is also sufficient to ensure whatever correctional treatment this Court finds appropriate.

## **CONCLUSION**

For the reasons discussed above, Mr. Drammeh respectfully requests that this Court impose a sentence within the advisory guideline range. He further requests that this Court not impose a fine, as he does not have the ability to pay.

>
> Respectfully submitted,
>
> By: _____/s/_____
> Counsel

Nia Ayanna Vidal, Esq.
Va. Bar # 48871
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0875
(804) 648-5033 (fax)
Nia_Vidal@fd.org

**CERTIFICATE OF SERVICE**

        I hereby certify that on June 14, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Michael C. Moore
Assistant United States Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
Mike.C.Moore@usdoj.gov


/s/
Counsel

Nia Ayanna Vidal, Esq.
Va. Bar # 48871
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0875
(804) 648-5033 (fax)
Nia_Vidal@fd.org